Glenn **LUDWIG**, Plaintiff–Appellee,

v.

**PAN OCEAN SHIPPING CO., LTD.,** owner of the M/V OCEAN ROYAL, Defendant–Appellant.

No. 90–35625.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1991.

Decided Aug. 6, 1991.

**850**

---

Edward M. Archibald, Heidi A. Irvin, Bogle & Gates, Seattle, Wash., for defendant-appellant.

Robert D. Duggan, David S. Vogel, Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz, Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, FARRIS and THOMPSON, Circuit Judges.

PER CURIAM:

## OVERVIEW

Glenn Ludwig, a longshoreman, was injured while working aboard the M/V Ocean Royal when he stepped down from a ladder onto snatch blocks nestled in a coiled lashing cable located at the bottom of the ladder. He sued Pan Ocean Shipping Company, the owner of the vessel, in a negligence action brought under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). After a bench trial, the district court entered judgment for Ludwig. The court held that Pan Ocean breached its turnover duty to warn and its turnover duty of safe condition. We reverse.

## STANDARD OF REVIEW

■ "Although the determination of whether established facts constitute negligence involves a mixed question of law and fact, the 'mixed question of negligence' is an exception to the general rule that mixed questions are reviewed *de novo.*" *Louie v. United States,* 776 F.2d 819, 822 (9th Cir. 1985) (citing *United States v. McConney,* 728 F.2d 1195, 1204 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)). "[A]ppellate review of a finding of negligence is governed by the clearly erroneous standard." *Miller v. United States,* 587 F.2d 991, 994 (9th Cir. 1978). The question whether the district court applied the proper standard of care, however, is one of law and is, therefore, subject to de novo review. *See Louie,* 776 F.2d at 822; *Armstrong v. United States,* 756 F.2d 1407, 1409 (9th Cir.1985); *Miller,* 587 F.2d at 994.

## DISCUSSION

In *Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 166, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981), the Supreme Court reaffirmed that a vessel owner "owes to the stevedore and his longshoremen employees the duty of exercising due care 'under the circumstances.'" (quoting *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d 371 (1969)). The *Scindia* duty of "due care under the circumstances" has five distinct aspects. *See Bjaranson v. Botelho Shipping Corp., Manila,* 873 F.2d 1204, 1207 (9th Cir.1989). Only the turnover duty to warn and the turnover duty of safe condition are implicated here.

1. Turnover Duty to Warn

■ The turnover duty to warn requires the shipowner

to warn[ ] the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not

known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

*Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622.

A vessel owner's duty to warn under *Scindia* arises only with regard to hazards "that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." *Id.*

The parties do not dispute that the coiled cable and the snatch blocks were an obvious hazard to one approaching the ladder to ascend. The district court, however, found that the coiled cable and the snatch blocks were a nonobvious hazard to one who descended the ladder and momentarily forgot the hazard, as Ludwig testified he did. We conclude the district court erred in applying its momentary forgetfulness doctrine to this case.

A competent longshoreman whose work requires him to ascend and descend a ladder must anticipate that any hazard that he observes at the bottom, on ascending, may very well be there when he comes down. Momentarily forgetting the hazard does not erase the notice given by its presence.

The shipowner had no duty to warn Ludwig of the hazard. It was obvious, so its mere presence carried a warning. *Cf. Torres v. Johnson Lines,* 932 F.2d 748, 750 (9th Cir.1991) (no requirement that shipowner give warning of obvious hazard where stevedores were, or should have been, aware of it); *Bjaranson,* 873 F.2d at 1209 n. 7 (hazard may not have been obvious in the darkness to the longshoreman but it was obvious to the stevedore so the shipowner had no duty to warn).

### 2. Turnover Duty of Safe Condition

■ The obviousness of the hazard, which disposes of Pan Ocean's alleged liability for breach of its turnover duty to warn, is not dispositive of the question whether Pan Ocean breached its turnover duty of safe condition. Pan Ocean's obligation with regard to the turnover duty of safe condition is to exercis[e] ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property....

*Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622.

"[T]he obviousness of the defect does not absolve the vessel owner of its duty to turn over the ship in a condition under which expert and experience [sic] stevedores can operate safely." *Martinez v. Korea Shipping Corp., Ltd.,* 903 F.2d 606, 610 (9th Cir.1990) (citing *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622). In some cases, we have seen that reasonable factfinders may differ over whether an obvious hazard presents an unreasonably dangerous work environment. *See id.* In other cases, an obvious hazard can be removed or avoided easily enough that its presence cannot constitute a breach of the duty of safe condition. *See Bjaranson,* 873 F.2d at 1208.

In *Bjaranson,* a longshoreman sued a vessel owner under section 905(b) for breach of the turnover duty of safe condition. The longshoreman had been injured when attempting to descend from a hatch cover to the deck, eight feet below. *Bjaranson,* 873 F.2d at 1205–06 & n. 1. He reached in the darkness for a coaming ladder without handholds that ended two or three feet short of the hatch cover. Finding nothing to hold onto, he fell to the deck. *Id.* at 1206.

Bjaranson had been using the ladder instead of the primary passageway because the primary hatchway was blocked by the legs of a crane. *Id.* at 1205. We said "the evidence ... supports the conclusion that an expert and experienced stevedore could have safely conducted the cargo operation." *Id.* at 1208. The evidence relied upon to reach this conclusion was testimony that the crane could have been moved upon request and that there were alternative means of moving between hatches other than by using the ladder. *Id.* We stated "it is apparent that all that was required to eliminate in its entirety any arguable

hazard was movement of the crane. Such circumstances cannot give rise to a breach of the duty of safe condition." *Id.*

Other courts are in essential accord with the rationale of *Bjaranson.* *See, e.g., Treadaway v. Societe Anonyme Louis–Dreyfus,* 894 F.2d 161, 167 (5th Cir.1990) (when faced with obviously unsafe condition, longshoreman has "light burden" to show that circumstances made safer alternatives unduly impractical or time consuming); *Teply v. Mobil Oil Corp.,* 859 F.2d 375, 378 (5th Cir.1988) (shipowner not liable for obvious dangers unless, in order to avoid danger, longshoreman would be forced either to leave the job or face penalties for causing delay); *Jupitz v. National Shipping Co.,* 730 F.Supp. 1358, 1363 (D.Md.1990) (summary judgment granted for shipowner where plaintiff longshoreman injured after fall on spilled peppercorns failed to show "obvious alternative of sweeping the peppercorns to the side was either impractical or so time consuming as to cause serious delay in the operation").

There was evidence that the hazard created by the coiled cable and snatch blocks could have been rectified by removal. Some evidence indicated this could have been accomplished in a matter of minutes. Other evidence suggested that removal might have taken fifteen to twenty minutes.

This factual question requires no resolution. Ludwig offered no evidence that he was under any time or supervisory pressure that precluded him from seeing to its removal. *Cf. Teply,* 859 F.2d at 378. The uncontested facts indicate the opposite, for when his accident occurred he had stopped work and was en route to speak to the foreman about a different safety problem. He failed to carry his burden of showing that the circumstances made safer alternatives unduly impractical or time consuming. *See Treadaway,* 894 F.2d at 167.

Ludwig's momentary forgetfulness of the presence of the obvious hazardous condition, a circumstance upon which the district court relied, is irrelevant to the question whether Pan Ocean breached its turnover duty of safe condition.

[I]n preparing the ship for a cargo operation, the vessel must exercise ordinary care in light of the fact that the operation will be conducted by an 'expert and experienced' stevedore. This implies that certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them.

*Bjaranson,* 873 F.2d at 1207–08. In other words, "the ship must be 'in such condition that an expert and experienced stevedoring contractor, *mindful of the dangers he should reasonably expect to encounter,* arising from the hazards of the ship's service or otherwise,' will be able to conduct the cargo operation with safety." *Id.* at 1208 (quoting *Federal Marine Terminals,* 394 U.S. at 416 n. 18, 89 S.Ct. at 1151 n. 18) (emphasis in *Bjaranson* ).

A longshoreman is an expert who is required to be "mindful" of hazards—not forgetful of them. A shipowner is not required "to anticipate the action or inaction of a careless stevedore." *Polizzi v. M/V Zephyros II Monrovia,* 860 F.2d 147, 149 (5th Cir.1988). Rather, a shipowner may rely on the expertise of longshoremen and "leave unremedied conditions that would otherwise be considered unreasonably dangerous to less skilled persons." *Bjaranson,* 873 F.2d at 1208. It is for this reason that the question whether an average reasonable person would be excused from forgetting about a hazard aboard ship is irrelevant when the issue is whether a longshoreman should be excused from forgetting such a hazard. Thus, *Bensen v. South Kitsap School Dist. No. 402,* 63 Wash.2d 192, 386 P.2d 137 (1963), upon which the district court relied, is inapposite.

## CONCLUSION

Pan Ocean did not breach either its turnover duty to warn or its turnover duty of safe condition. The district court's judgment against Pan Ocean is reversed.

**REVERSED.**