**Donald W. ELBERG, Plaintiff–Appellant,**

v.

**MOBIL OIL CORPORATION, Defendant–Appellee.**

No. 91–2765.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1992.

Decided July 10, 1992.

district court entered judgment for Mobil, and Mr. Elberg now appeals. We affirm.

# I
## BACKGROUND

### A. *Facts*

We state the facts as found by the district court. Nicor, a shipbuilding and repair company, operates a shipyard on the Mississippi River near Hartford, Illinois. From July 13, 1987, through August 25, 1987, the M/V Mobil Leader underwent extensive repairs at Nicor's shipyard. Mr. Elberg worked in a crew with three other welders repairing the fuel tanks and replacing rusty elbows on fuel tank vent pipes. The district court found that, when this kind of work, done with arc welders and acetylene torches and known as "hot work," is performed on a fuel tank or on vent pipes from a fuel tank, the tank must be opened and the cover removed to prevent explosions and to permit immediate access in case of fire. Before any shift begins at Nicor, a "competent person" opens every tank on which hot work will be done and checks to see if there are explosive fumes in the tank. However, even though the tanks are checked, it is still necessary to keep the covers off while hot work is being done on the vent pipes. Although there was testimony that at times the covers would be laid sideways over the openings, the district court credited testimony that during work on fuel tanks, the covers were laid aside.[1] The district court also found that it was not always feasible to barricade or cover an open tank because of the nature of the work being conducted, or the short period of time the cover would be removed.[2]

L. Thomas Lakin, Roy C. Dripps (argued), Gail Renshaw, Lakin & Herndon, Wood River, Ill., Edward G. Maag, Mathis, Marifian & Richter, Belleville, Ill., for plaintiff-appellant.

Leo W. Nelsen, Holtkamp, Liese, Beckemeier & Childress, St. Louis, Mo., for defendant-appellee.

Before RIPPLE and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Donald W. Elberg, a welder employed by Nicor National (Nicor) at its shipyard, was injured when he fell into an open hatch on the M/V Mobil Leader, then in the shipyard for repair. He sued Mobil Oil Corporation (Mobil), the owner of the vessel, for negligence under the Longshore and Harbor Worker's Compensation Act (LHWCA), 33 U.S.C. § 905(b). After a bench trial, the

---

1. *See, e.g.,* Tr. II at 142 (testimony of Nicor welder Otis Brown: covers were laid aside because "if a fire gets in there, we got to get in and out quick to put it out"); *see also* Memorandum Opinion and Order, No. 87–3819 at 5 (July 1, 1991) (finding 19 of the district court: "Otis Brown, a welder's foreman for Nicor, testified that no one would work on a tank without the cover being left off until finished. Brown testified that the hatch cover is taken off and laid aside to permit immediate entrance to the tank in case of fire.").

2. The district court found:
    6. Welding with an arc welder and cutting with an acetylene torch are considered "hot work." Any time that hot work is performed on a fuel tank or a vent line, the tank must be opened and the cover removed to prevent explosions. Plaintiff and other witnesses testified that, among experienced welders, it was customary practice to open the fuel tank and leave off the hatch cover.
    7. It was not always feasible to barricade or cover an open tank because of the nature of

On the day before his fall, Mr. Elberg worked on the fuel tanks on the port side of the M/V Mobil Leader from 7:30 in the morning until 4:00 in the afternoon. He testified that he was "in and out" of several of the fuel tanks that day. The evening shift worked on the same fuel tanks. On the day of his fall, Mr. Elberg worked along with three other welders on the vent pipes leading from the port side fuel tanks. The work included cutting off the rusty elbows with an acetylene torch and welding on new elbows and flame screens with an arc welder. Between 8:15 and 8:30 in the morning, during the progress of this work, Mr. Elberg stepped back without looking, fell into the open hatch of the number two port fuel tank, and was injured. Mr. Elberg testified that he did not know the hatch was open, asserting that the evening before he had closed it and "finger tighten[ed]" it shut. The district court found that on the morning of his fall Mr. Elberg knew or should have known that the tank was open. The district court noted the testimony of Donald Delp, the foreman of Mr. Elberg's crew, that it was necessary to have the tank open during the work being done that day, that he did not know who had opened the tank, but that he had probably done it himself, and that safety chains were not up because it was necessary to get into the hatch.[3]

Finally, the district court found that Mobil neither supervised nor assisted in the work on the fuel tanks, and that none of Mobil's employees were in the immediate vicinity of the accident site. Mobil employees on the vessel were involved in tasks unrelated to tank repairs, such as painting and cleaning. Moreover, there was no contract provision, positive law or custom requiring Mobil to supervise or to warn Nicor's welders of open and obvious conditions on the vessel.

## B. *The District Court's Decision*

The district court concluded that, absent any contract provision, positive law or custom, Mobil's duties to Nicor employees under section 905 of the LHWCA were those identified in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981): (1) turnover duty of safe condition; (2) turnover duty to warn; (3) the active control duty; and (4) the duty to intervene. The court held that Mobil had breached none of these duties: there was no evidence that Mobil had failed to exercise ordinary care in turning over the vessel for repairs to Nicor; it had not breached its turnover duty to warn, because Mr. Elberg knew or should have known of the open tank; Mobil was not in active control of the area where Mr. Elberg's crew was working; and finally there was no evidence showing that circumstances existed giving rise to a duty to intervene in the repair operations because Mobil could reasonably rely on Nicor to remedy any unsafe situation. Also, in regard to the duty to intervene, the district court noted that, although an OSHA regulation required open hatches to be barricaded, the regulation did not apply when the use of guards is made impracticable by the work in progress.[4] In accordance with its

the work being conducted, or the short period of time the cover was removed.
Memorandum Opinion and Order, No. 87–3819 at 2 (July 1, 1991).

3. Mr. Elberg objects that he cannot find this last statement (that it was necessary to get into the hatch that morning) in the transcript of Mr. Delp's testimony; and in fact it does not appear to be there. However, Mr. Delp's testimony, when read from the cold, written record, is not always easy to follow. The district court, working with the aid of photographic exhibits and hearing rather than reading Mr. Delp's testimony, may well have understood him correctly. In any case, on the record before us, the district court's broader finding that it was not always practicable to barricade the open hatches is not clearly erroneous, but is based on the specific testimony of two witnesses and supported by other testimony on the necessity of having unobstructed access to the tanks in case of fire. As will become evident in our later discussion, it is this evidence, rather than testimony about the work crew's actions on the morning of the accident, that is most relevant to our analysis.

4. The regulations state:
(b) When employees are working in the vicinity of flush manholes and other small openings of comparable size in the deck and other working surfaces, such openings shall be suitably covered or guarded to a height of

finding that the use of guards was impracticable, the district court determined that the regulation did not alter his conclusion that Mobil had no duty to intervene. Accordingly, the district court found in favor of Mobil and against Mr. Elberg.

## II

## ANALYSIS

### A. Contentions of the Parties

On appeal, Mr. Elberg contends that Mobil had actual knowledge of a dangerous condition (the open hatch) and knew that Nicor would not correct it. Therefore, argues Mr. Elberg, Mobil had a duty to intervene and correct the danger. Mr. Elberg also takes issue with the district court's findings that it was customary and necessary to keep the hatches open during work on the vent pipes and that it was impracticable to erect barricades around the open hatch. Mobil contends that it had no actual knowledge that the hatch was open, and that, in any case, it was reasonable to rely on Nicor to barricade open hatches when practicable.

### B. Discussion

■ We review cases brought pursuant to section 905(b) of the LHWCA under the standards generally applicable to negligence cases. *See Ludwig v. Pan Ocean Shipping Co.*, 941 F.2d 849, 850 (9th Cir. 1991). A determination that particular facts constitute negligence involves a mixed question of law and fact that is reviewed under the clearly erroneous standard. *See Ludwig*, 941 F.2d at 850; *Mucha v. King*, 792 F.2d 602, 605 (7th Cir. 1986). A finding is clearly erroneous when the reviewing court on the entire evidence is "left with the definite and firm conviction that a mistake has been committed." *Bennett v. Local Union No. 66, Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union*, 958 F.2d 1429 (7th Cir. 1992) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982)). The question of whether the district court applied the proper standard of care, however, is one of law and is subject to de novo review. *Ludwig*, 941 F.2d at 850.

■ Section 905(b) of the LHWCA provides longshoremen and harbor workers with a cause of action against vessel owners for injuries caused by the "negligence of a vessel." [5] In *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court considered the scope of a ship owner's liability under section 905(b) in the context of a cargo loading operation.

---

not less than 30 inches, except where the use of such guards is made impracticable by the work actually in progress.

(c) When employees are working around open hatches not protected by coamings to a height of 24 inches or around other large openings, the edge of the opening shall be guarded in the working area to height [sic] of 36 to 42 inches, except where the use of such guards is made impracticable by the work actually in progress.

29 C.F.R. § 1915.73.

5. Section 905(b) provides:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

Under *Scindia*, shipowner liability can arise in several circumstances. First, when a shipowner turns a ship over to the stevedore, the shipowner must exercise ordinary care to have the ship and its equipment in a reasonably safe condition and must "warn[ ] the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." *Scindia*, 451 U.S. at 167, 101 S.Ct. at 1622. Second, a shipowner may be liable if it actively involves itself in the operations of the stevedore or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation. Lastly, even if the shipowner is not actively involved in operations and does not have active control of the vessel, if the shipowner has actual knowledge of a dangerous condition which has arisen after the turning over of the ship to the stevedore, the shipowner has a duty to intervene, under certain circumstances which we discuss in the following paragraphs, to correct the dangerous condition.

■ In the present case, the appellant challenges the district court's determination that there was no evidence to show that Mobil had a duty to intervene; he does not challenge the district court's determinations with regard to the shipowner's other duties. Therefore, we set out in more detail the principles governing the duty to intervene. The LHWCA places a statutory duty on the employer (here, Nicor, the re-

pair company) to provide and maintain reasonably safe working conditions. *See* 33 U.S.C. § 941. Thus, "as a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards." *Scindia*, 451 U.S. at 170, 101 S.Ct. at 1623.[6] The shipowner "has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop" after the ship is turned over. The shipowner has "justifiable expectations that those duties will be performed" by the stevedore or repair company without the shipowner's supervision. *Scindia*, 451 U.S. at 176, 101 S.Ct. at 1626. Therefore, a shipowner's actual knowledge of a dangerous condition is not enough in itself to create a duty. However, if the shipowner has actual knowledge that an unsafe condition exists and that the stevedore is allowing that condition to continue, and if the stevedore's judgment in not remedying the condition is "obviously improvident," the shipowner has a duty to intervene. *Id.*[7]

■ Law, custom, or contract may affect the shipowner's duty to intervene. In *Scindia*, OSHA regulations required that defective winches "be reported immediately to the officer in charge of the vessel," *id.* at 177, 101 S.Ct. at 1627 (quoting 29 C.F.R. 1918.53(a)(5)), thus permitting an inference "that when a defective winch is discovered, it should not be repaired by the stevedore but should be reported to and repaired by the shipowner." *Id.*

■ In the present case, the district court made no explicit finding as to whether Mobil had actual knowledge of the open hatch. However, such a finding was not necessary in view of its determination, with

6. *See United States Fidelity & Guaranty Co. v. Jadranska Slobodna Plovidba*, 683 F.2d 1022, 1028 (7th Cir.1982) ("Even if the defendant should have regarded [the plaintiff longshoreman] as no better than a sheep wandering about the ship with no rational concern for his own safety, it was entitled to regard the stevedore as his principal shepherd.").

7. *See Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir.1990) ("[I]n some situations the vessel owner is entitled to rely on the stevedore's judgment

that the condition, though dangerous, was safe enough.") (citing *Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1039 n. 12 (5th Cir.1983) and *Scindia*, 451 U.S. at 175–76, 101 S.Ct. at 1626–27); *see also Gay v. Barge 266*, 915 F.2d 1007, 1012 (5th Cir.1990).

The Ninth Circuit "has imposed an additional requirement for establishing the duty [to intervene]: the vessel must have helped create the hazard." *Torres v. Johnson Lines*, 932 F.2d 748, 751 (9th Cir.1991).

which we agree, that Mobil could reasonably rely on Nicor to remedy any dangerous situation. The district court found that the hatches Mr. Elberg and his crew were working near were necessarily open and that it was not always feasible to barricade them because of the nature of the work being conducted or the short period of time the cover would be removed. Mr. Elberg disputes these findings, but, based on the record before us, we cannot say they are clearly erroneous.[8] The district court heard conflicting testimony regarding the necessity for keeping the hatches open during hot work on the vent pipes and regarding the practicability of erecting barricades.[9] *See Connors v. United States,* 917 F.2d 307 (7th Cir.1990) ("A factfinder's choice between two permissible views of the evidence cannot be clearly erroneous.").

The OSHA regulations considered by the district court impose a duty on the *employer* (Nicor) to barricade open hatches and other deck openings.[10] Nevertheless, the imposition of that duty on the employer does not relieve the shipowner of any duty which it would otherwise have under existing law, custom or contract. 29 C.F.R. § 1915.3(b). Moreover, OSHA regulations may be relevant evidence as to whether a particular condition creates an unreasonable risk of harm. *See Ollestad v. Greenville S.S. Corp.,* 738 F.2d 1049, 1053 (9th Cir.1984), *cert. dismissed,* 469 U.S. 1197, 105 S.Ct. 982, 83 L.Ed.2d 984 (1985). However, in the present case, the relevant OSHA regulations recognize that work in progress may make it impracticable to cover or guard hatches; thus, at times, open hatches may present "a risk 'inherent in the carrying out of the contract' for repairs." *Stass v. American Commercial Lines, Inc.,* 720 F.2d 879, 884 (5th Cir.1983)

(quoting *West v. United States,* 361 U.S. 118, 123, 80 S.Ct. 189, 193, 4 L.Ed.2d 161 (1959)). Indeed, in the present case, the district court found that it was not always feasible to barricade the open hatches. In the days before the accident, Nicor employees had been working not only on the vent pipes, but also down in the tanks. Mr. Elberg himself had been in and out of the tanks on the day before his accident.

In these circumstances, Nicor's judgment in leaving the hatch open and unbarricaded at the time of the accident was not "obviously improvident," whether or not barricades would on that morning have hindered the work then in progress or have affected Nicor's ability to respond quickly to a fire or other emergency. Although Mr. Elberg characterizes the duty he alleges Mobil had as a duty to intervene, the duty he seeks to impose on Mobil would amount to a requirement that Mobil supervise and inspect the work, that Mobil keep tabs on the work in progress and determine when the nature of the work allowed closing the hatches or made positioning barricades around the open hatches practicable. Mobil had no such duty. *See Scindia,* 451 U.S. at 172, 101 S.Ct. at 1624; *Hines v. British Steel Corp.,* 907 F.2d 726, 729 (7th Cir.1990).

### Conclusion

For the reasons stated above, the decision of the district court is affirmed.

AFFIRMED.

---

**8.** Mr. Elberg also disputes the district court's finding that he knew or should have known that the hatch was open. However, the district court relied on this finding only in regard to its conclusion that Mobil had not breached a duty to warn, a conclusion which Mr. Elberg does not contest.

**9.** *See* note 3 above.

**10.** 29 C.F.R. § 1915.3 provides in pertinent part:

(a) The responsibility for compliance with the regulations of this part is placed upon "employers" as defined in § 1915.4.
(b) This part does not apply to owners, operators, agents or masters of vessels unless such persons are acting as "employers." However, this part is not intended to relieve owners, operators, agents or masters of vessels who are not "employers" from responsibilities or duties now placed upon them by law, regulation or custom.