Denise THOMAS & Willie Lavon Thomas, Plaintiffs–Appellants,

v.

NEWTON INTERNATIONAL ENTER-PRISES; Southern Shipping Management (Chile) Ltd., Defendants–Appellees.

No. 93–55317.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1994.

Decided Dec. 14, 1994.

Thomas J. Pierry, III, Pierry & Moorhead, Wilmington, CA, for plaintiffs-appellants.

Patrick G. Rogan, Dimitrios P. Biller, Pillsbury Madison & Sutro, Los Angeles, CA, for defendants-appellees.

Before: WALLACE, REINHARDT, and TANNER,* Circuit Judges.

REINHARDT, Circuit Judge:

This case involves a negligence action by an injured longshore worker against the owner of the vessel. The district court granted summary judgment for the vessel. We reverse.

### BACKGROUND

On July 6, 1991, Stevedoring Services of America assigned longshore worker Denise Thomas to assist with the discharging and loading of cargo from the vessel "Imperial". At approximately 2:30 p.m., Thomas and her work partner, Joe Graham, boarded the Imperial and proceeded to Hatch # 6 where cargo operations were in progress. When Thomas and Graham arrived at the access ladder leading from the weather deck of Hatch # 6 to the tween deck, Thomas looked briefly down the ladderwell, allowed Graham to climb down first, and then followed him down the access ladder. When Thomas reached the tween deck, she released the ladder, took one step and fell through a second hatch opening leading to the access ladder between the tween deck and lower hold. On the way down, Thomas' leg caught in the rung of the second access ladder and broke her fall. In the process of falling, Thomas struck her head, back, shoulder and foot against the second ladder. The hatch opening which Thomas fell through was completely uncovered and unguarded.

Thomas filed a negligence action against the vessel owner, Newton International, in California state court. Her husband also sued for loss of consortium. Subsequently, Newton removed the action to federal court, and soon thereafter filed a motion for summary judgment. During the summary judgment hearing, the district court excluded the declaration of Thomas' expert on the grounds that the expert relied in part on the Pacific Marine Safety Code and that an insufficient foundation had been established for his qualifications. The district court also denied Thomas' request for an in limine hearing to elaborate on the expert's qualifications. Finally, the district court determined that no genuine issue of material fact existed, and that Newton had not violated any of the duties it owed to Thomas. Thus, the court granted Newton's summary judgment motion. We review *de novo*.

### ANALYSIS

Generally, the Longshore and Harbor Workers' Compensation Act establishes a comprehensive workers' compensation program that provides benefits to longshore workers and their families for work-related injuries. 33 U.S.C. §§ 901–950. Under this act, the longshore worker's employer, the stevedore, is shielded from liability beyond payment of statutory benefits. Under certain limited circumstances, the longshore worker may seek damages in a statutory negligence action from the owner of the vessel on which he was injured under 33 U.S.C. § 905(b). *See Howlett v. Birkdale Shipping*, —— U.S. ——, ——, 114 S.Ct. 2057, 2062, 129 L.Ed.2d 78 (1994).

The Supreme Court outlined the limited circumstances in which a vessel may be liable under § 905(b) in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). The Court explained that vessels have five duties under § 905(b). These are the turnover duty of safe condition, the turnover duty to warn, the active involvement duty, the active control duty, and the duty to intervene. *See Bjaranson v. Botelho*, 873 F.2d 1204, 1207 (9th Cir.1989). The district court rejected liability under each of these theories as a matter of law. Because we conclude that the district court erred with respect to the question of the turnover duty of safe condition, we reverse on that ground. Therefore, we need not address the other theories of liability.

---

* Honorable Jack E. Tanner, United States District Judge sitting by designation.

## I. An Unreasonably Dangerous Condition

 One of the primary duties of a vessel owner is to turn over the vessel to the stevedore in reasonably safe condition. *See Scindia*, 451 U.S. at 167, 101 S.Ct. at 1622. Although a shipowner is not required to turn over a vessel free of all hazards, the vessel must be free of hazards that would prevent an expert and experienced stevedore from carrying on his operation in a reasonably safe manner. *Bjaranson*, 873 F.2d at 1208.[1] In other words, any "obvious" hazard must not "present [ ] an unreasonably dangerous work environment to experienced longshoremen exercising reasonable care." *Martinez v. Korea Shipping*, 903 F.2d 606, 610 (9th Cir. 1990). Generally, this type of issue is inappropriate for resolution at the summary judgment stage. "Summary judgment is *rarely* granted in negligence cases. Whether the defendant acted reasonably is ordinarily a question for the trier of fact." *Martinez*, 903 F.2d at 609 (emphasis added).

 In *Martinez*, the court reversed a summary judgment order in favor of the vessel owner reasoning that whether a hazard was unreasonably dangerous to longshore workers was a question of fact for the jury. *Id.* at 610–11. In this case, Thomas presented evidence, including the declaration of her expert witness George Kuvakas, regarding the hazardousness of the unguarded hatch opening. The district court excluded Kuvakas' declaration. In doing so, it abused its discretion, and ultimately erred in granting the motion for summary judgment.

### A

Thomas' expert, George Kuvakas, Jr., was a longshore worker with 29 years experience. In his declaration, Kuvakas stated that throughout his longshore industry career, he had worked in every job category within the industry and for every stevedoring company. After reviewing all subpoenaed documents from Newton and photographs of the accident site, Kuvakas declared that in his experience "the presence of an unguarded, uncovered deck opening or manhole positioned within two feet of the bottom of an access ladder is an extremely unusual and hazardous condition." He also stated that "it is customary for a vessel to have in place over all deck openings or manholes either a properly functioning manhole cover or a barricade of some sort such as a large piece of plywood or a chain-type railing." In addition, he declared that "[t]his type of condition would not be something that even an experienced longshore worker would be looking for or anticipate...." The district court refused to consider the Kuvakas declaration on the grounds that an inadequate foundation was provided for his qualifications as an expert and that his declaration contradicted case law.[2]

We conclude that this exclusion was an abuse of the district court's discretion. It is clear from the face of the declaration that Kuvakas was qualified to give expert testimony. The issue of qualifications is governed by Federal Rule of Evidence 702 which contemplates a broad conception of expert qualifications. As the terms of the rule state, an expert may be qualified either by "knowledge, skill, experience, training, or education." Moreover, the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert. Kuvakas' declaration stated that he had 29 years of longshore experience, and that he had worked in a variety of job categories for numerous stevedoring companies. Clearly, this lays at least the minimal foundation of knowledge, skill, and experience required in order to give "expert" testimony as to the

---

1. The Supreme Court's most recent pronouncement on vessel owner's duties does not directly apply to this case. In *Howlett*, the Court addressed the shipowner's duty to warn of latent hazards in the cargo stow or cargo area as distinct from other types of shipboard hazards. *See Howlett*, —— U.S. at ——, 114 S.Ct. at 2066.

2. The district court did not specifically cite the cases that it thought contradicted the declaration. Presumably, the court meant that the legal conclusions were inconsistent with established legal duties of vessel owners. However, to the extent that Kuvakas' testimony was offered to establish the *factual proposition* that the condition of Newton's vessel the afternoon of Thomas' accident presented an unreasonably dangerous work environment to experienced longshore workers, it was entirely consistent with established case law.

working conditions of experienced longshore personnel. Moreover, if the district court desired more detail about Kuvakas' expert qualifications, it should have given Thomas an opportunity to provide it. *Cf. Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1317 (9th Cir. 1985) (stating in Rule 705 context that if the court desires more information, it should not grant summary judgment against plaintiff without affording plaintiff an opportunity to supply the information).[3]

## B

 Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion. *See Bulthuis*, 789 F.2d at 1317–18. *See also Maffei v. Northern Ins. Co.*, 12 F.3d 892, 897 (9th Cir.1993). When the Kuvakas declaration is included among the evidence offered by Thomas, and that evidence is viewed in the light most favorable to her, it raises a genuine issue of material fact as to the ultimate issue of whether the unguarded hatch opening presented an unreasonably dangerous condition.[4]

 Because the declaration raises a material issue of fact as to the ultimate issue of "unreasonable dangerousness," the motion for summary judgment must be denied. Nonetheless, Newton argues that, independent of the "unreasonably dangerous" issue, it could not have breached its turnover duty of safe condition because the unguarded ladderwell was "easily avoidable," citing *Ludwig v. Pan Ocean Shipping*, 941 F.2d 849, 851 (9th Cir.1991). Newton argues that Thomas could have stepped to the right and avoided the open hatch instead of stepping to the left and falling through it, and therefore it is entitled to summary judgment. However, Newton is incorrect. The question whether a hazard is easily avoidable is simply part of the larger question whether a hazard is unreasonably dangerous.[5] It is the failure to

3. During oral argument, Newton's counsel cited for the first time the case of *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499 (9th Cir. 1994). Counsel argued that under *Claar*, the district court had clearly not abused its discretion. However, the argument overstates the holding of *Claar* which is inapplicable here.

*Claar* was concerned with the admissibility of *scientific* expert testimony. After examining the experts' reasoning and methodology, the district court found that the experts' conclusions were inconsistent with generally accepted scientific procedures and were based on nothing more than subjective belief and unsupported speculation. *Id.* at 502. The reviewing court found that the district court had not erred in excluding these affidavits because under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, ⸺ U.S. ⸺, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the district court was "affirmatively required to find that the experts' conclusions were based on scientific knowledge." 29 F.3d at 502.

*Daubert* was clearly confined to the evaluation of *scientific* expert testimony. *See Daubert*, ⸺ U.S. at ⸺, n. 8, 113 S.Ct. at 2795, n. 8. Special concerns arise when evaluating the proffer of scientific testimony that do not arise when evaluating the type of expert testimony offered here. Kuvakas' conclusions were based on his 29 years of extensive experience on the waterfront. While a *scientific conclusion must be* linked in some fashion to the scientific method, a link which was missing in *Claar*, Kuvakas' nonscientific testimony need only be linked to some body of specialized knowledge or skills. Kuvakas' 29 years of experience provide that link.

4. Although the turnover duty of safe condition is usually framed in terms of stevedores, it is clear that danger to *longshore workers* is an essential part of the inquiry. In *Scindia*, the Court explained that vessels must deliver a ship "in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations *with reasonable safety to persons and property....*" 451 U.S. at 167, 101 S.Ct. at 1622 (emphasis added). The concern is not really one of preventing harm to stevedores but rather one of preventing harm to longshore workers. Delivering a ship upon which an expert stevedore can safely direct cargo operations necessarily means a ship upon which "experienced longshoremen exercising reasonable care" can work safely. *See Martinez*, 903 F.2d at 610. Thus, when examining whether a hazard was unreasonably dangerous, the focus of the factual inquiry is frequently directed at experienced longshore workers. *See Martinez*, 903 F.2d at 609, 610, 611. *See also Ludwig v. Pan Ocean Shipping Co.*, 941 F.2d 849, 852 (9th Cir. 1991) ("shipowner may rely on the expertise of longshoremen"); *Kirsch v. Plovidba*, 971 F.2d 1026, 1029–31 (3d Cir.1992) ("shipowner's duty is only to provide a workplace where skilled longshore workers can operate safely.").

5. Any argument that the avoidability of a hazard should be analyzed separately from its dangerousness is simply a disguised assumption of risk or contributory negligence argument. Such arguments are completely inconsistent with the Longshore and Harbor Workers' Compensation Act. Congress expressly intended to abolish the

eliminate an unreasonably dangerous hazard that constitutes a breach of the vessel's turnover duty of safe condition. In determining whether a particular hazard is unreasonably dangerous, the fact finder must examine the totality of the factual circumstances surrounding the hazard and the accident and consider them as a whole. Although the avoidability of the hazard is relevant to whether the hazard was unreasonably dangerous, it is not necessarily determinative. There may be circumstances in which a hazard can be easily avoided but some other factors present make it nonetheless unreasonably dangerous. *See for example Kirsch,* 971 F.2d at 1031 ("customary practice may suggest that a shipowner should know that longshore workers frequently confront rather than avoid a type of obvious hazard. If so, the shipowner may be negligent in not eliminating the hazard").

*Ludwig* is consistent with the analysis we have explicated. In *Ludwig,* the plaintiff longshore worker was injured when he stepped down from a ladder onto snatch blocks nestled in a coiled lashing cable. Although Ludwig had noticed this hazard when he initially ascended the ladder, he momentarily forgot about it on descent. The court decided that the vessel had not breached its turnover duty because the coiled cable and blocks were easily removable. Because of the transitory nature of the hazard and the fact that the longshoreman could have easily removed it in a relatively brief period of time, the court determined that the hazard was not unreasonably dangerous. It is clear that the totality of the factual circumstances, including the transitory nature of the hazard, compelled that conclusion, not simply the words "easily avoidable" or "easily removable." It was, in short, the nature of the

hazard, the fact that it could be rectified, the amount of time it would have taken to rectify it, and the fact that the necessary time was apparently available that underlay the court's decision. *See Ludwig,* 941 F.2d at 852.

In general, whether or not a hazard is so easily avoidable or easily rectifiable that given all of the circumstances present it could not constitute an unreasonably dangerous condition must be factually evaluated on a case-by-case basis. *Cf. Kirsch,* 971 F.2d at 1030 ("In many cases, this fact-intensive question will be inappropriate to decide on summary judgment and must be left for the jury."). The Kuvakas' declaration raises a material issue of disputed fact as to whether the hazard was unreasonably dangerous. The conclusion that it was reflects an expert judgment based on an assessment of all of the circumstances including the question of the avoidability of the hazard. In sum, Thomas' evidence presents a genuine dispute on the ultimate issue, and accordingly, summary judgment was inappropriate.

It is clear from Kuvakas' declaration that he considered all of the circumstances, including those that relate to the question of easy avoidance. Kuvakas did not simply state that the unguarded ladderwell opening at the base of an access ladder was "an extremely unusual and hazardous condition"; he specifically noted that it was the type of condition that "would not be something that even an experienced longshore worker would be looking for or anticipate...."[6] This factual statement bears directly on the question whether a hazard is readily avoidable. Whether a longshore worker is likely to become aware of the hazard, and of the prospects for avoiding it, constitutes an important factor in resolving "easy avoidance" ques-

use of assumption of risk and contributory negligence defenses when it designed this statutory scheme. *Scindia,* 451 U.S. at 165 n. 13, 167 n. 14, 176 n. 22, 101 S.Ct. at 1621 n. 13, 1622 n. 14, 1626 n. 22.

**6.** Kuvakas based his assessment that experienced longshore workers would not anticipate this unusual hazard at least in part on his conclusion that the hazard constituted a violation of the Pacific Marine Safety Code. The Code, which governs conduct affecting a large number of longshore workers, governs all work performed

under the terms of industry agreement to which Newton is apparently not a party. Notwithstanding Newton's arguments to the contrary, this reference to the PMSC was not inappropriate. In this instance, Kuvakas' reference to the Code was only for the purpose of explaining why longshore workers would not ordinarily encounter such a condition, and thus would not be likely to anticipate its presence on the vessel. The other references to the Code are not relevant to the issue before us, and we therefore express no opinion as to their propriety.

tions. The evidence presented by Thomas shows that she was climbing backwards down an access ladder, lacked knowledge of the danger beneath her, and was unaware of any type of conscious decision that could be made. Moreover, as the declaration states, she would not likely have become aware of the hazard—and thus the possibility of avoidance—through the exercise of reasonable caution. The hazard was not one that an experienced longshore worker or stevedore "mindful of the dangers he should reasonably expect to encounter" would anticipate. *See Ludwig,* 941 F.2d at 852 (quoting *Bjaranson,* 873 F.2d at 1208 (further quotation and emphasis omitted).

■ The facts in the present case contrast sharply with those in *Ludwig* and *Bjaranson.* In *Ludwig* the plaintiff had actual knowledge of the danger and simply forgot about it. In *Bjaranson,* the plaintiff deliberately elected to forego the safer alternatives of asking the crane operator to move the obstructing crane or squeezing past the crane leg. Rather, he consciously chose to scale across the crane and attempt to descend down a partial ladder not intended for that purpose. The cases cited in *Ludwig* similarly involve plaintiffs faced with choices who voluntarily selected the less prudent alternative. The hazardous circumstances here are clearly factually distinguishable from those cases, and others relied on by Newton, in which courts have held the hazardous situations to be "easily avoidable." That Thomas could have stepped in a different direction and "easily avoided" the hazard is not enough to permit Newton to avoid the imposition of liability—not if, as Kuvakas' declaration suggests, Thomas would not reasonably, through the exercise of reasonable caution, have anticipated the hazard.

In conclusion, the district court abused its discretion in excluding the Kuvakas declaration. The declaration sets forth an adequate foundation as to Kuvakas' qualifications to give expert testimony. Equally important, it raises a factual issue with respect to the existence of an unreasonably dangerous condition that precludes the award of summary judgment in Newton's favor.

## II. The Unpublished Disposition

■ In disposing of Thomas' claims, the district court relied on *Lapari v. Kawasaki Kisen Kaisha,* 923 F.2d 862 (9th Cir.1991) (Table), an unpublished memorandum disposition. Under Ninth Circuit rules governing the precedential use of unpublished opinions, *Lapari* clearly may neither be cited nor relied on.[7] Both Newton in its motion for summary judgment and the district court in its disposition violated this rule by citing extensively to *Lapari.* We remind both the parties and the district court that the terms of Circuit Rule 36–3 must be strictly followed. *See, generally, In Re Burns,* 974 F.2d 1064, 1068 (9th Cir.1992) (Restrictive rules regarding unpublished dispositions "keeps the books from being cluttered with dicta that could result in confusion for lawyers and tribunals addressing similar issues.").

### *CONCLUSION*

Because a material issue of fact exists as to whether the open unguarded ladderwell presented an unreasonably dangerous work environment, the district court erred in granting Newton's summary judgment motion.

REVERSED AND REMANDED.

---

7. Circuit Rule 36–3 reads:
Any disposition that is not an opinion or an order designated for publication under Circuit Rule 36–5 shall not be regarded as precedent and shall not be cited to or by this Court or any district court of the Ninth Circuit, either in briefs, oral argument, opinions, memoranda, or orders, except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.