**Jerry GONNUSCIO, Plaintiff,**

v.

**SEABRAND SHIPPING LIMITED, a foreign corporation, Defendant.**

**Civil No. 95–752–FR.**

United States District Court,
D. Oregon.

June 11, 1997.

---

Jeffrey S. Mutnick, Robert Pardington, Pozzi Wilson Atchison, Portland, OR, for Plaintiff.

Dean D. DeChaine, Steven F. Hill, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for Defendant.

## OPINION

FRYE, District Judge.

This is an action by the plaintiff, Jerry Gonnuscio, for the personal injuries he sustained while he was working as a longshoreman on the vessel, the M/V SEABRAND, owned by the defendant, Seabrand Shipping Limited (Seabrand). Before the court are the plaintiff's motion for summary judgment (# 41); the defendant's cross-motion for summary judgment (# 47); and the plaintiff's motions to strike the statement of Villanueva and the declarations of Vazeos and Velissaratos.

## UNDISPUTED FACTS

The vessel, the M/V SEABRAND, was docked at the Columbia Grain dock in Portland, Oregon on March 28 and 29, 1994 to be loaded with grain under the supervision of Rogers Terminal and Shipping Corp. (Rogers), the stevedore. Grain is loaded onto the M/V SEABRAND through four hatches. To cover and uncover the hatches, a longshore-

man lifts the pontoons that serve as hatch covers with a crane. Once the pontoons are lifted, longshoremen physically push and pull them into position.

The vessel has a raised platform, approximately two to two and one-half feet above the deck, which runs along the deck in the area of the hatches. The top of the raised platform is a metal grating which is heavy enough to support a man. Under the raised platform are some pipes, including the sounding pipe for the No. 1 double-bottom water ballast tank.

According to the superintendent engineer, Panagiotis Velissaratos, and the chief officer, Bayani Villanueva, a section of the metal grating above the sounding pipe is removable to allow access to the pipe to take soundings of the No. 1 double-bottom water ballast tank. Judging from the photographs, this metal grating is approximately three feet by four feet. The metal grating is normally left in an upright vertical position leaning against the frame of the raised platform. This position of the metal grating allows access to the sounding pipe below it without having to move the metal grating. The crew and officers are instructed to keep the metal grating in an upright position unless ordered otherwise by the captain or chief officer. If anyone has to stand on top of the raised platform, the metal grating is moved to a horizontal position at the top of the frame of the raised platform. According to Villanueva, the metal grating was in an upright position when the vessel arrived in Portland.

The plaintiff, Jerry Gonnuscio, worked for Rogers as a longshoreman. His job was to cover and uncover the hatches on the M/V SEABRAND. Late in the afternoon of March 29, 1994, the longshoremen loaded grain onto the vessel. Some of the longshoremen, including Gonnuscio, then started to cover the hatches. Gonnuscio stepped onto the raised platform between hatches No. 1 and No. 2 to help maneuver a pontoon into a position where it would cover one of the hatches. The metal grating had been moved from an upright position to a horizontal position on top of the raised platform. Gonnuscio stood on top of the metal grating.

His movements in pushing the pontoon caused the metal grating to slide partially off the raised platform. Gonnuscio fell into the opening, tangled his feet in the piping running under the raised platform, and fell back against the frame. He injured his back, leg and arm.

Villanueva, the chief officer of the M/V SEABRAND, was acting as the duty officer at the time that the grain was being loaded. He was present on deck during the loading operation and watched the longshoremen load the grain. According to Villanueva, no one ever asked him or any other crew member to move the metal grating to a horizontal position while the M/V SEABRAND was docked at Columbia Grain. Villanueva did not observe anyone move the metal grating to a horizontal position. He did not know that the metal grating was in a horizontal position until after Gonnuscio was injured. Gonnuscio did not ask anyone to put the metal grating in a horizontal position and does not know who moved it there. Villanueva speculates, however, that one of the longshoreman moved the metal grating to a horizontal position.

The superintendent engineer for Seabrand, Velissaratos, testifies that the metal grating was designed to be easily moved for access to the sounding pipe; that the metal grating was never welded to the frame of the raised platform; that neither the vessel's crew nor the longshoremen had ever experienced any problems using the raised platform or the metal grating before Gonnuscio was injured; and that there had been no previous accidents. Velissaratos was not on the vessel on the day Gonnuscio was injured. Velissaratos does not have personal knowledge of what the captain told the crew concerning the metal grating or whether there was any need to have access to the sounding pipe during the process of loading the grain.

Gary Larsen was the supercargo for Rogers and was assigned to the M/V SEABRAND when it was docked at Columbia Grain. As a supercargo, Larsen was responsible for loading the vessel and for the safety of the vessel and its cargo. Before the accident, Larsen had been in the area of the vessel where the accident occurred and had

not noticed anything unusual. Larsen inspected the raised platform and the metal grating after Gonnuscio was injured. In Larsen's opinion, the metal grating would not have been moved from a horizontal position for any purpose because the sole purpose of the metal grating was to protect the piping underneath it. Larsen testified that in order to protect the piping underneath the metal grating, standard operating procedure is to keep the metal grating in a horizontal position. Larsen further states that he did not notice the metal grating in an upright position before the accident, and if he had noticed it in an upright position, he would have immediately notified the vessel that there was a hazard which needed attention. Larsen testified that neither he nor any other stevedore would have placed the metal grating in a horizontal position on the raised platform because the placement of the metal grating is the responsibility of the vessel. Larsen testified that no soundings were taken of the ballast tanks while he worked his shifts during the two days the M/V SEABRAND was at Columbia Grain. Larsen also states that the metal grating had been previously welded, and these welds were defective.

Shortly after the accident occurred, Larsen reviewed the metal grating and prepared a report, stating that a "defective weld on grating over vessel on deck piping resulting in above [accident] report." Larsen showed this document to the chief officer, Villanueva, who signed the corner of the document without making any other notation. Larsen states that, in his experience, if the chief officer or other representative of the vessel does not concur in the report, he will make a notation of any exceptions that he has to that report on the report before signing it.

Panagiotis Vazeos, a director for Seabrand who has developed policies concerning operations on board vessels owned by Seabrand, states that only the vessel's master, and not the chief officer, has the authority to sign documents which will bind Seabrand. The chief officer may sign a routine document, such as the stevedore report prepared by Larsen, as an acknowledgment of its receipt, but the chief officer does not have the authority to bind Seabrand.

## CONTENTIONS OF THE PARTIES

Gonnuscio contends that Seabrand cannot prevail on its "turnover defense" because there is no evidence that Gonnuscio, the stevedore, or some other longshoreman is responsible for Gonnuscio's injuries. Gonnuscio further contends that the metal grating had a latent defect, but that a longshoreman would not have discovered the defect in the ordinary course of his duties. Gonnuscio contends that the vessel owner should have warned the stevedore of such defect.

Seabrand contends that there is no evidence that it was negligent in any of the five ways that a vessel owner can be negligent, as stated in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

## ANALYSIS AND RULING

1. *Motions to Strike*

■ In his reply memorandum, Gonnuscio moves to strike the affidavit of Bayani Villanueva dated September 5, 1994, which is entitled "Statement of Reported Incident." Gonnuscio contends that the affidavit should be stricken because Seabrand did not produce the "Statement of Reported Incident" in response to a discovery request asking for all

accident reports and because it is hearsay. Gonnuscio also contends that the affidavit is not admissible at trial because Villanueva, who does not live in the United States and who no longer works for Seabrand, is not available for deposition and will not be available at the time of trial.

The court declines to strike the affidavit of Bayani Villanueva as a discovery sanction. Gonnuscio has had time to counter the affidavit in his opposition to this motion and has not asked for additional time to conduct further discovery.

■ Fed.R.Civ.P. 56(e) states that an affidavit supporting or opposing summary judgment "shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein" (emphasis added). The facts in Villanueva's affidavit are ones which may be admissible at trial. Whether his affidavit can be read or admitted as an exhibit at trial is not important here. Gonnuscio's motion to strike Villanueva's affidavit is denied.

■ Gonnuscio moves to strike the declaration of Panagiotis Vazeos. Gonnuscio contends that Vazeos' declaration that the chief officer, Villanueva, did not have the authority to bind Seabrand is a legal conclusion. Villanueva signed Larsen's report in which Larsen states that a defective weld on the metal grating caused the accident. Gonnuscio contends that Villanueva's signature on Larsen's report is an admission of liability for the consequences of the defective weld. Villanueva's signature on the report is not dispositive of the liability issue, however, because Velissaratos' testimony is contrary to Larsen's testimony in that he states that the metal grating was never welded. Because there is an issue of fact and the court has before it a motion for summary judgment, additional support for one side of the controversy will not resolve the issue of fact. Gonnuscio's motion to strike the declaration of Panagiotis Vazeos is denied.

■ Gonnuscio moves to strike the declaration of Panagiotis Velissaratos. Gonnuscio contends that Velissaratos lacks personal knowledge to make a declaration because he does not state that he was on the vessel during the relevant time period, and he never had contact with the vessel while it was in a United States port.

The court finds that, as the superintendent engineer for Seabrand who was on board the M/V SEABRAND approximately every two months, Velissaratos has sufficient personal knowledge to make the statements in his declaration concerning the design and use of the metal grating, even though he was not on board the vessel while it was in the United States. The fact that Seabrand produced Vazeos as the person most knowledgeable about certain topics in response to a notice of deposition of the corporation under Fed. R.Civ.P. 30(b)(6) does not mean that other people, including Velissaratos, do not also have personal knowledge sufficient to provide relevant evidence. The motion to strike Velissaratos' declaration is denied.

2. *Motions for Summary Judgment*

Gonnuscio brings this action under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), which allows a person injured because of the negligence of a vessel to bring an action against the vessel.

■ The United States Supreme Court stated the duties a vessel owes to longshoremen under section 905(b) in *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). Those duties are:

[E]xercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property .... [turnover duty of safe conditions]

*Id.* at 167, 101 S.Ct. at 1622.

[To warn] the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the

stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. [turnover duty to warn]

*Id.*

[T]he vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman .... [duty of due care in active involvement]

*Id.*

[The vessel may be liable] if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation. [duty of active control]

*Id.*

■ Finally, a vessel has a duty to intervene and correct a hazardous condition if (1) the vessel is aware of the condition; (2) the vessel should realize that the condition presents an unreasonable risk of harm to the longshoremen; and (3) the vessel knows that the stevedore, making an "obviously improvident" judgment, has failed to remedy the situation. *Id.* at 175–76, 101 S.Ct. at 1626–27. The United States Court of Appeals for the Ninth Circuit has created an additional requirement for the duty to intervene: the vessel must have helped create the hazard. *Torres v. Johnson Lines*, 932 F.2d 748, 750–51 (9th Cir.1991).

■ A vessel does not have a duty to supervise and inspect in order to discover hazardous conditions that develop within cargo operations assigned to the stevedore unless such a duty is imposed by contract, positive law, or custom. *Scindia*, 451 U.S. at 172, 101 S.Ct. at 1624–25.

■ A latent hazard is defined to be a hazard that is not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of its work. *Howlett v. Birkdale Shipping Co.. S.A.*, 512 U.S. 92, 105–06, 114 S.Ct. 2057, 2067, 129 L.Ed.2d 78 (1994). If a hazardous condition is obvious when the stevedore assumes control of the cargo operation, the vessel has no duty to

warn the individual longshoremen, even if the condition is not obvious to the longshoremen. *Bjaranson v. Botelho Shipping Corp. Manila*, 873 F.2d 1204, 1209 n. 7 (9th Cir.1989) (the lack of handholds and handrails on a ladder was obvious in daylight when the stevedore assumed control, even though the longshoreman could not see the ladder design at night).

■ The burden of proving actionable negligence under these standards is on the longshoreman. *Id.* at 1208. In admiralty, whether an "obvious" hazard presents an unreasonably dangerous condition to experienced longshoremen exercising reasonable care is usually a question for the trier of fact. *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir.1994).

■ There are genuine issues of material fact that preclude the grant of summary judgment to either party. Larsen and Villanueva both state that they did not lower the metal grating into a horizontal position. They both state or imply that the workers under their control, the crew in the case of Villanueva and the longshoremen in the case of Larsen, did not lower the metal grating. Villanueva contends that a longshoreman lowered the metal grating; Larsen implies that a crew member lowered the metal grating, possibly before the vessel was turned over to the stevedore. Villanueva states that the metal grating was in an upright position when the vessel arrived in Portland. Larsen states he did not notice the metal grating in an upright position, and that if he had noticed it in an upright position, he would have reported the hazard to the vessel and asked for its correction. Velissaratos states that the metal grating has never been welded. Larsen states that the metal grating has a defective weld which allowed it to slide out of place. In short, there are factual issues as to the position of the metal grating when the M/V SEABRAND arrived in Portland and was turned over to the stevedore, the identity of the person who put the metal grating in a horizontal position; and the condition of the metal grating. These issues must be decided by the trier of fact, which also must determine whether the vessel breached any of the duties it owed to Gonnuscio. The

motions for summary judgment filed by both parties are denied.

## CONCLUSION

Gonnuscio's motion for summary judgment (# 41) is denied. Seabrand's cross-motion for summary judgment (# 47) is denied. Gonnuscio's motions to strike the statement of Villanueva and the declarations of Vazeos and Velissaratos are denied.