UNITED STATES of America,
Plaintiff–Appellee,

v.

Manuel Antonio VALENCIA,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Maria Marleny LOAIZA, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Juana LOPEZ, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Miguel Antonio CARMONA–ARROYAVE,
Defendant–Appellant.

Nos. 92–30458, 92–30459, 92–
30490 and 93–30015.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 30, 1993.

Decided Jan. 28, 1994.

Robert A. Goffredi, Reese and Goffredi, Portland, OR, for defendant-appellant Manuel Antonio Valencia.

John E. Storkel, Storkel & Grefenson, Salem, OR, for defendant-appellant Maria Marleny Loaiza.

Mark Bennett Weintraub, Weintraub & Halley, Portland, OR, for defendant-appellant Miguel Antonio Carmona–Arroyave.

Ellen C. Pitcher, Asst. Federal Public Defender, Portland, OR, for defendant-appellant Juana Lopez.

Leslie K. Baker, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Before: BROWNING, SCHROEDER, and HALL, Circuit Judges.

PER CURIAM:

I.

Miguel Antonio Carmona–Arroyave, Maria Loaiza, Juana Lopez and Manuel Valencia were part of a cocaine distribution organization centered in Portland, Oregon. Carmona–Arroyave was the leader of the enterprise; his wife Loaiza laundered money received from the sale of cocaine and invested the profits; Lopez distributed the cocaine to the organization's salespersons, collected the receipts from the sale of the drugs and maintained records; and Valencia was one of the organization's street-level sellers.

On February 7, 1991, the Oregon police searched a Portland apartment believed to be rented by Carmona–Arroyave and seized 96 grams of cocaine; $10,835 in currency, including $1,000 in an envelope addressed from Carmona–Arroyave to Loaiza; a scale; packaging material; drug paraphernalia and pagers. They also seized a ledger containing what appeared to be a record of sales of over 10,000 grams of cocaine, an entry for "M.L." and a reference to a post office box rented by Loaiza.

After further investigation, the police obtained and executed warrants to search several Portland locations rented or controlled by Carmona–Arroyave, including a room at the Scandia Lodge motel, Lopez's apartment and other residences belonging to the four appellants and other members of the organization. They seized a total of 4184.24 grams of cocaine, $27,726 in cash or cash equivalents, sales and accounting records and drug paraphernalia.

In the motel room, they found and arrested Carmona–Arroyave and Loaiza, and seized a pager, unexecuted postal money orders, a receipt for a $300 wire transfer to Medellin, Colombia, and Loaiza's purse. In the purse officers found two ledgers listing drug sales, one bearing the name "Manuel" (Valencia's first name) and the other bearing the name "Jorge" (the first name of another

street-level seller in Carmona–Arroyave's organization).

Carmona–Arroyave admitted his leadership role in the activity and accepted responsibility for all cocaine seized. He sought to exculpate Loaiza, telling police the drug records in her purse were his and that she knew nothing of his drug business.

Officers found Lopez in bed in her apartment. They seized a pager on her nightstand and over 3.5 kilograms of cocaine. Lopez initially denied knowledge of the drugs, but admitted she was involved in the distribution ring after Carmona–Arroyave was brought to her apartment and told her to cooperate.

The government charged Carmona–Arroyave, Loaiza, Lopez and Valencia with conspiring to possess and possessing cocaine with intent to distribute. All but Loaiza pled guilty to one or more of the charges. Loaiza stood trial and was convicted. Loaiza appeals her conviction. All four appeal their sentences.[1]

## II.

■ Valencia argues the district court erroneously held him responsible for 7.3 kilograms of cocaine in determining his base offense level under the Sentencing Guidelines. The court found cocaine sales by Jorge Ivian Villa, another street-level seller in Carmona–Arroyave's operation, were reasonably foreseeable to Valencia and in furtherance of the overall conspiracy to which Valencia pled guilty, and included the cocaine involved in these sales in the calculation of Valencia's base offense level. Since Valencia did not object to this determination when it

was made, we review for plain error. *U.S. v. Lopez–Cavasos,* 915 F.2d 474, 475–76 (9th Cir.1990).

Valencia was sentenced on November 2, 1992 under the "relevant conduct" provisions of the Guidelines that had been amended effective November 1, 1992,[2] and argues the district court committed plain error by applying the pre-amendment version. He argues that under the amended version, his participation with Villa in the overall conspiracy is not enough to hold him responsible for Villa's sales. He relies heavily on the following illustration accompanying the 1992 amendment:

> Defendant P is a street-level drug dealer and knows of other street-level drug dealers in the same geographic area who sell the same type of drug as he sells. Defendant P and other dealers share a common source of supply, but otherwise operate independently. Defendant P is not accountable for the quantities of drugs sold by the other street-level drug dealers because he is not engaged in a jointly undertaken criminal activity with them. In contrast, Defendant Q, another street-level drug dealer, pools his resources and profits with four other street-level drug dealers. Defendant Q is engaged in a jointly undertaken criminal activity and, therefore, he is accountable under subsection (a)(1)(B) for the quantities of drugs sold by the four other dealers during the course of his joint undertaking with them because those sales were in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity.

1. Questions raised by Maria Loaiza in her appeal of her conviction, Carmona–Arroyave's claim the district court used the wrong amount of narcotics in setting his base offense level and Carmona–Arroyave's and Lopez's claims that the district court erred in denying them three-point reductions for acceptance of responsibility are addressed in a separate, unpublished decision.

2. Prior to November 1 the commentary to the provision read in part:

   In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the [defendant is accountable for] conduct of others in furtherance of the

execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.

U.S.S.G. § 1B1.3, comment. (n.1).

   The current version reads in part:

   [I]n the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), [the defendant is accountable for] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity....

U.S.S.G. § 1B1.3(a)(1)(B).

U.S.S.G. § 1B1.3, comment. (n.2, illust. (c)(6)). Based on this illustration, Valencia argues he cannot be liable for Villa's sales because there was no evidence he and Villa pooled resources and profits or worked together in any way.

■ The 1992 amendments did not change the scope of liability for the acts of coconspirators. Under both versions of § 1B1.3(a), liability extends to reasonably foreseeable acts in furtherance of the charged conspiracy. Illustration (c)(6) is not to the contrary. Pooling resources or profits is evidence of joint criminal activity, but is not essential to finding such activity. Valencia admitted his joint criminal activity with Villa by pleading guilty to the conspiracy. *U.S. v. Mathews*, 833 F.2d 161, 163 (9th Cir.1987) (guilty plea conclusively establishes facts alleged in the indictment). He has not challenged the validity of that plea. Since the district court adopted the Presentence Report's conclusions that Villa's sales were reasonably foreseeable and in furtherance of the conspiracy, the requirements of § 1B1.3(a)(1)(B) were met. There was no plain error in the district court's application of the Guidelines.

AFFIRMED.