Donovan McKENDALL,
Plaintiff–Appellant,

v.

CROWN CONTROL CORP., Crown
Corporation, Defendant–
Appellee.

The TRAVELERS INSURANCE
COMPANY, INC., Plaintiff–
in–Intervention,

v.

CROWN EQUIPMENT CORPORATION,
dba Crown Lift Trucks, Defendant–
in–Intervention.

No. 95–56657.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1997.

Decided Aug. 8, 1997.

Norman W. Alshuler, Encino, CA, for
Plaintiff–Appellant.

Eric A. Amador, Bronson, Bronson & McKinnon, Los Angeles, CA, for Defendant–Appellee.

Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER,* District Judge.

FLETCHER, Circuit Judge:

Donovan McKendall ("McKendall") sued the manufacturer of a forklift known as a "stock picker" for injuries incurred when a sofa fell on him while he was operating the forklift. He appeals the district court's grant of summary judgment in favor of Crown Control Corporation ("Crown"). The district court granted summary judgment after concluding it would exclude, as scientifically unreliable, the proposed testimony of McKendall's product design expert, because McKendall failed to show that the expert's testimony was based on sound scientific principles. We have jurisdiction under 28 U.S.C. § 1291 and we reverse and remand.

## I. Factual Background & Procedural History

McKendall was operating the stock picker on his job at Levitz Furniture Company. The stock picker has a platform for the operator to stand on which rises and lowers as the cargo rises and lowers. The cargo rides on a separate platform in front of the operator's platform, but is not separated from the operator's area by a barrier. As McKendall was operating the stock picker, a sofa slid from the cargo area of the stock picker into the operator area, pinning his legs. McKendall fractured his right leg and injured his right knee and back.

McKendall seeks judgment against Crown, the manufacturer, based on strict liability, negligence, and breach of warranty. He alleged that the stock picker was defectively designed because it did not include a barrier between its cargo area and its operator area. He further claimed that the barrier should have been interlocked with the stock picker's controls, so that the stock picker would operate only when the barrier was in place. McKendall's counsel disclosed to Crown that Martin Siegel ("Siegel"), an experienced mechanical and metallurgical engineer, would present expert testimony supporting McKendall's assertion that a safety device should have been in place on the stock picker and that placement of a safety device was feasible.

Crown filed a motion *in limine* to exclude Siegel's expert testimony pursuant to Fed. R.Evid. 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("*Daubert*"), "on the ground that Mr. Siegel's proposed testimony is not based on 'scientific knowledge,' is not derived by a reliable and accepted 'scientific method,' and does not amount to 'good science.'"

In response, McKendall filed a witness narrative setting forth Siegel's qualifications and anticipated testimony. McKendall also included the same information in a declaration of his counsel, Norman Alshuler ("Alshuler declaration"), and provided the district court with a copy of Siegel's *curriculum vitae*. The Alshuler declaration stated, in part:

> Siegel is a consulting, mechanical and metallurgical engineer who .... has been working in the area of product design, product development and product safety for over 50 years.
>
> In addition, he was a professor of mechanical engineering ... for 33 years primarily in the area of design of machines and product safety.
>
> He has testified in product cases for over 30 years on matters dealing with machinery and safety of machinery .... [and] has investigated hundreds of fork lift cases and is familiar with all kinds of fork lifts including stockpickers of the type and similar to the one involved in this case....

* Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation.

Mr. Siegel has inspected the stockpicker involved in this case and read all literature relevant thereto.

Mr. Siegel is expected to testify to the risks of injury inherent in the present design of the stockpicker in which the operator is unguarded and is exposed to be injured by moving loads on the stockpicker and rectifying the defect due to the high risk of injury. He will further testify that alternative safe designs were available including the addition of a movable interlocked guard between the operator and the load which would protect the operator from moving or falling loads when operating the stockpicker involved.

The district court granted the motion to exclude, finding Siegel's proposed expert testimony inadmissible under *Daubert* and Rule 702. Specifically, the district court stated that McKendall's proffer "fails the *Daubert* test because Plaintiffs make no showing that these conclusions are based on sound scientific principles." The district court concluded that McKendall had offered nothing more than the expert's qualifications and unsubstantiated conclusions.

The district court subsequently denied McKendall's motion for relief based on Fed. R.Civ.P. 60(b) and motion for reconsideration pursuant to Central District Local Rule 7.16, despite McKendall submitting a declaration by Siegel, which explained Siegel's qualifications and proposed testimony in more detail. The district court stated, "[p]laintiffs have again failed to show that the gate proposed by the expert is feasible, or that the gate would not impede the stockpicker's proposed uses, or that the gate would increase the overall safety of the vehicle. Conclusory assertions as to the effectiveness of the gate are not sufficient." (citations omitted). Once Siegel's testimony was excluded, McKendall was left with no expert witness testimony to support his action. Consequently, the district court granted Crown summary judgment.

McKendall appeals the district court's orders: 1) excluding Siegel's testimony; 2) denying relief from and reconsideration of that order; and 3) granting summary judgment in Crown's favor.

## II. Standard of Review

We review a grant of summary judgment de novo. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The applicability of *Daubert* is a question of law which we review de novo. *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1517 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996). We review a ruling to exclude expert testimony based on Rule 702 for an abuse of discretion. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir.) (*"Daubert II"*), *cert. denied*, —— U.S. ——, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995). The abuse of discretion standard applies to a Rule 702 ruling even though the ruling was dispositive of a motion for summary judgment. *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir.1996).

## III. Discussion

In its landmark decision in *Daubert*, the Supreme Court held that Rule 702, governing the admissibility of scientific expert testimony, superseded *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), which had required scientific testimony to be generally accepted in the relevant scientific community in order to be admissible under Rule 702. *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2794; *see United States v. Cordoba*, 104 F.3d 225, 227 (9th Cir.1997). Rule 702 provides:

> If *scientific, technical, or other specialized knowledge* will assist a trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702 (emphasis added).

When faced with a proffer of expert testimony, the district court must determine whether the expert witness is qualified and has specialized knowledge that will "assist a trier of fact to understand the evidence or to determine a fact in issue." *Id.; see also Daubert*, 509 U.S. at 591, 113 S.Ct. at 2795.

The court has broad discretionary powers in determining whether or not the proposed expert is qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702; *see also Daubert II*, 43 F.3d at 1315. Next, the court must decide if the proposed subject matter of the expert opinion properly concerns "scientific, technical, or other specialized knowledge" under Rule 702. *Bogosian v. Mercedes–Benz of North America, Inc.*, 104 F.3d 472, 476 (1st Cir.1997) (quoting Fed.R.Evid. 702). Finally, "the court performs a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact, *i.e.*, whether it rests on a reliable foundation and is relevant to the facts of the case." *Id.*

The *Daubert* Court noted several factors that courts should consider in determining whether proffered "scientific" expert testimony would assist a trier of fact, including: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. at 2796–97; *see also Daubert II*, 43 F.3d at 1316; *United States v. Jones*, 24 F.3d 1177, 1179 (9th Cir.1994).

Here, the district court presumed that for Siegel's testimony to be admissible, it must be based on "scientific" knowledge to which the *Daubert* factors would apply. The district court was particularly troubled that Siegel had not built or tested the safety device he proposed. Consequently, based on Rule 702 and *Daubert*, the district court concluded that Siegel's testimony was not reliable and thus would not be helpful to a trier of fact.

McKendall does not contend that Siegel's testimony would withstand an application of the *Daubert* factors. Rather, he argues that the district court erred in applying the *Daubert* factors to Siegel's testimony since Siegel's testimony was not based on "scientific" knowledge. McKendall asserts that Siegel's testimony is based on his experience as a mechanical engineer who has investigated hundreds of forklift accidents. He argues that Siegel has "technical, or other specialized knowledge" described in Rule 702, and to which the *Daubert* factors, applicable to scientific knowledge, do not apply. Thus, he proposes that Siegel's testimony should have been admitted under Rule 702, as Siegel demonstrated through experience, training, and education his familiarity with forklifts. Furthermore, he argues, this technical or other specialized knowledge would have assisted the trier of fact to understand the evidence and to determine facts in issue, consistent with Rule 702.

■ We agree that the district court erred in applying the *Daubert* factors, which are relevant only to testimony bearing on "scientific" knowledge, to Siegel's testimony. The Ninth Circuit has recognized that *Daubert* is confined to the evaluation of "scientific" expert testimony. *See Cordoba*, 104 F.3d at 230 ("*Daubert* applies only to the admission of scientific testimony.... In order to qualify as scientific knowledge, an inference or assertion must be derived from the scientific method. The government expert testified on the basis of specialized knowledge, not scientific knowledge."); *Thomas v. Newton Intern. Enter.*, 42 F.3d 1266, 1270 n. 3 (9th Cir.1994) ("*Daubert* was clearly confined to the evaluation of *scientific* expert testimony.") (emphasis in original) (citing *Daubert*, 509 U.S. at 590, n. 8, 113 S.Ct. at 2795 n. 8). This reading of *Daubert* is also supported by the Supreme Court's explanation in *Daubert*, itself, that "[r]ule 702 *also* applies to 'technical, or other specialized knowledge.' Our discussion is *limited* to the scientific context because that is the nature of the expertise offered here." *Daubert*, 509 U.S. at 590 n. 8, 113 S.Ct. at 2795 n. 8. (emphasis added).[1]

1. Our Circuit has made what seem to be conflicting pronouncements as to whether *Daubert* applies to all expert testimony or only to scientific knowledge. *Compare Cordoba*, 104 F.3d at 230 ("*Daubert* applies only to the admission of scientific testimony.") and *Thomas*, 42 F.3d at 1270 n. 3 ("*Daubert* was clearly confined to the evaluation of *scientific* expert testimony.") *with Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n. 8 (9th Cir.1997) ("*Daubert*'s holding applies to all expert testimony, not just testimony based on novel scientific methods.") and *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 501 n. 2 (9th Cir.1994) (noting that *Daubert*'s

In *Thomas,* we concluded that the district court abused its discretion in excluding the expert testimony of a longshore worker with 29 years experience who proffered testimony as to customary safety procedures aboard a vessel. 42 F.3d at 1269. We noted that under Rule 702, an expert may be qualified by "knowledge, skill, experience, training, or education." We characterized the expert's testimony as based on his specialized knowledge acquired through his vast experience. *Id.* at 1270 n. 3. It was thus improper for the district court to exclude such testimony based on *Daubert. See id.*

Although we have not previously confronted this issue in the context of a products liability case, the Tenth Circuit faced a factual situation similar to this case in *Compton. Compton v. Subaru of America, Inc.,* 82 F.3d 1513, 1515 (10th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996). We find *Compton* instructive. *Compton* involved a plaintiff who brought a products liability action against the manufacturer of an automobile. The plaintiff alleged that the vehicle was defectively designed because there was excessive intrusion of the roof and side of the automobile into the passenger compartment during rollover. *Id.* at 1516. The plaintiff's expert was a mechanical engineer who proffered testimony that the car was defectively designed because it permitted excessive roof crush. *Id.* He testified that to correct the alleged defect, he would design the vehicle to allow only two to three inches of roof crush. *Id.* Like Siegel, the expert here, the expert in *Compton* examined the allegedly defective product and read relevant literature but did not provide a model or test his proposed design. *Id.* at 1516–17.

The district court allowed the expert to testify, relying in part on *Daubert,* for its rationale. The Tenth Circuit, on appeal, upheld the admission of the testimony but concluded that *Daubert* did not apply to the proffered testimony. The court noted that "application of the *Daubert* factors is unwarranted in cases where expert testimony is based solely upon experience or training.... In such cases, Rule 702 merely requires the trial court to make a preliminary finding that proffered expert testimony is both relevant and reliable while taking into account '[t]he inquiry envisioned by Rule 702 is ... a flexible one.'" *Id.* at 1518–19. (citations omitted). In language particularly relevant here, the court concluded:

> In sum, we do not believe *Daubert* completely changes our traditional analysis under Rule 702. Instead, *Daubert* sets out additional factors the trial court should consider under Rule 702 if an expert witness offers testimony based upon a particular methodology or technique.
>
> ... [I]t is unnecessary to reach the question whether *Daubert* mandates a further inquiry into [the expert's] "scientific, technical, or other specialized knowledge" under Rule 702 because we find his testimony was not based on any particular methodology or technique. Rather, [the expert] reached his expert conclusions by drawing upon general engineering principles and his twenty-two years of experience as an automotive engineer.

*Id.* at 1519. The *Compton* court affirmed the district court's reasoning that the expert's testimony was "facially helpful and relevant," and thus admissible under Rule 702. *Id.*

■ Similarly, we conclude that Siegel's testimony, based on his engineering experience and his having investigated hundreds of fork lift cases over the past thirty years, that a safety device is feasible, is both "facially helpful and relevant" and seemingly reliable. *See id.* Crown will have every opportunity on cross-examination to point out that Siegel

---

requirements "apply to all proffered expert testimony-not just testimony based on novel scientific methods or evidence."). All of the pronouncements are dicta except those in *Thomas* and in *Cordoba. Cordoba* holds that *Daubert* is inapplicable in determining whether expert testimony regarding the modus operandi of narcotics traffickers is admissible. *Cordoba,* 104 F.3d at 230. The *Cordoba* court, in stating that *Daubert* only applies to the admissibility of "scientific" testi-

mony, is correct, at least in a narrow sense, as to *Daubert's* applicability. However, if one views *Daubert* in a broader context, the *Daubert* Court is giving strong advice to district courts: in ruling on admissibility, trial judges are the gatekeepers and should pay particular attention to the reliability of the expert and his or her testimony. *See Daubert,* 509 U.S. at 590, 113 S.Ct. at 2795. In that sense, *Daubert* applies to all expert testimony.

has not created or tested the safety device which he suggests would have prevented the accident.[2] The district court erred in excluding Siegel's testimony based on *Daubert*.[3]

Since we conclude that Siegel's testimony should have been admitted, we reverse the district court's grant of summary judgment to Crown. Siegel's expert testimony creates a genuine issue of material fact sufficient to defeat a summary judgment motion. *See Thomas*, 42 F.3d at 1270.

Reversed and Remanded.

---

**2.** *Cf. Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n. 8 (9th Cir.1997) ("Unlike novel scientific theories, a jury should be able to determine whether asserted technical deficiencies undermine a survey's probative value."). Likewise, a jury should be able to determine the weight to be accorded Siegel's testimony concerning a proposed safety device.

**3.** We note that had the district court excluded Siegel's testimony based only on Rule 702, and not mentioned *Daubert*, we would still conclude that the court abused its discretion in excluding his testimony. *See Thomas*, 42 F.3d at 1269.

However, because the court's ruling was based in part on an incorrect application of *Daubert*, the court committed an error of law upon which we base our ruling. *See Koon v. United States*, —— U.S. ——, ——, 116 S.Ct. 2035, 2048, 135 L.Ed.2d 392 (1996) (noting that the abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions); *Cordoba*, 104 F.3d at 229.